

No. 3:17-cv-763-CWR-FKB

JOSEPH PAPIN,

*Plaintiff*,

*v.*

UNIVERSITY OF MISSISSIPPI MEDICAL CENTER, *et al.*,

*Defendants*.

ORDER DISMISSING CLAIM AND DENYING QUALIFIED IMMUNITY

Before CARLTON W. REEVES, *District Judge*.

Dr. Joseph Papin, a Hispanic man and former resident at the University of Mississippi Medical Center, is suing his former supervisor, Dr. T. Mark Earl.[1] Papin alleges that Earl, while acting as a public employee, violated Papin's First Amendment right to free speech and his Fourteenth Amendment

---

[1] *See* Docket No. 18. Papin has also sued the University of Mississippi Medical Center ("UMMC") and Dr. LouAnn Woodward in her official capacity. The only pending motion before this Court, however, is Earl's motion to dismiss and for qualified immunity.

right to due process.[2] Earl, invoking the defense of qualified immunity, has moved to dismiss Papin's claims.[3]

I. FACTUAL ALLEGATION

Below are the facts as alleged in Papin's amended complaint.[4]

On January 10, 2017, Papin met with Earl and signed a formal remediation plan. The plan alleged five deficient areas of performance: "lying and being untruthful about patient care"; "leaving the hospital during duty hours (to exercise)-dereliction of duty"; "unwillingness to help with tasks"; "condescending tone to nurses and fellow residents"; and "poor inter-professional communication."[5] After Papin signed the remediation plan, Earl informed Papin that he was being placed on administrative leave and would not be permitted to return to work. Papin stayed away from UMMC and completed the other requirements of the remediation plan, which included drug testing and the submission of a written plan of personal study. Earl called Papin back into work on February 20, 2017 and officially terminated him from the residency program. Earl told him he was terminated for lying about a patient's bedsore in December 2016.

---

[2] Papin initially alleged a breach of contract claim against Earl, but that claim has been dismissed. *See* Docket Nos. 18, 31.

[3] *See* Docket Nos. 20, 22. The Court notes that Earl has filed identical motions twice on the docket.

[4] *See generally* Docket No. 18.

[5] *Id*. at ¶26.

After his termination, Papin retained counsel. His counsel began communicating with UMMC in early March 2017. Papin's counsel requested a formal appeals hearing for his client and suggested that a lawsuit was forthcoming. Sometime in the summer of 2017, prior to the appeals hearing, Papin filed a formal charge of discrimination with the EEOC alleging race discrimination and retaliation. The EEOC issued its Notice of Right to Sue.

In July 2017, there was an appeals hearing where Earl served in a "quasi-prosecutorial fashion" in front of a committee of his "peers in management." [6] Papin claims evidence was presented during the hearing that had not been disclosed to him previously, including allegations of inappropriate behavior toward a female coworker, untruthfulness about the work done before rounds, and a heated exchange with another UMMC employee. At the hearing, Papin was able to have counsel present, but counsel could not assist and Papin was unable to call or question any witnesses except for providing his own testimony. Based upon the hearing, Dr. Woodward, UMMC's chief executive officer, affirmed Papin's termination.

## II. LEGAL STANDARD

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept the factual allegations by Papin as true and make reasonable inferences in Papin's favor.[7] The court "must limit itself to the contents of

---

[6] *Id.* at ¶52.

[7] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

the pleadings, including attachments thereto."[8] Since *Iqbal*, the Fifth Circuit has clarified that the Supreme Court's emphasis on the plausibility of a complaint's allegations does not give district courts license to look behind those allegations and independently assess the likelihood that the plaintiff will be able to prove them at trial.[9] The plausibility standard calls only "for enough fact to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements."[10]

Earl has invoked a qualified immunity defense. Government officials invoke qualified immunity to shield themselves "from civil damages liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[11] The Court must take two steps in weighing a qualified immunity defense: "(1) whether facts alleged or shown by plaintiff make out the violation of a constitutional right, and (2) if so, whether that right was clearly established at the time of the defendant's alleged misconduct."[12]

"For a right to be clearly established under the second step of the qualified immunity analysis, the contours of that right

---

[8] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

[9] *See Iqbal*, 556 U.S. at 681.

[10] *Flagg v. Stryker Corp.* 647 F. App'x 314, 316 (5th Cir. 2016) (quotations and citations omitted).

[11] *Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d 572, 578 (5th Cir. 2009) (citations omitted).

[12] *Id.* at 579.

must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."[13] The reasonableness of an act is judged by asking if "all reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution."[14]

## III. DISCUSSION

### A. FIRST AMENDMENT RETALIATION

Papin argues that he was retaliated against after threatening to sue UMMC. He says he has a protected right "to sue and threaten suit against the government and its employees" under the First Amendment.[15] To prove this claim for First Amendment retaliation, he must show: "(1) he suffered an adverse employment action; (2) he spoke as a citizen on a matter of public concern; (3) his interest in the speech outweighs the government's interest in the efficient provision of public services; and (4) the speech precipitated the adverse employment action."[16]

Before moving through the four elements of a First Amendment retaliation claim, there is an issue that sticks out imme-

---

[13] *Bishop v. Arcuri*, 674 F.3d 456, 466 (5th Cir. 2012) (quotations and citations omitted).

[14] *Thompson v. Upshur Cty., Tex.*, 245 F.3d 447, 457 (5th Cir. 2001) (citations omitted).

[15] Docket No. 18 at ¶102.

[16] *Anderson v. Valdez*, 845 F.3d 580, 590 (5th Cir. 2016) (quotations and citations omitted).

5

diately to the Court. It is undisputed that Earl terminated Papin on February 20, 2017, prior to Papin's threat of suit. Therefore, Earl's initial termination of Papin could not have been in retaliation for Papin's threat of a lawsuit. After Papin's threat of a lawsuit, Earl's role was as the prosecutor at the appeals hearing. Papin's complaint about Earl's role at the hearing is that he presented evidence to the committee that he had never raised to Papin previously. Papin's complaint regarding Earl is one about notice,[17] and a lack of notice is a due process allegation. There is nothing distinct about the First Amendment claim against Earl that is not already encompassed by Papin's due process claim.

If a First Amendment retaliation claim was sufficiently pled, Earl would be entitled to qualified immunity. This summer, the Fifth Circuit noted that four cases in three years reached the court asking whether someone who is not a final decision maker can be liable for a First Amendment retaliation claim.[18] That is the exact question we are presented with here. According to the amended complaint, Earl made the first decision to terminate Papin on February 20, 2017. At the appeals hearing in July 2017, Earl acted as a "prosecuto[r]" with the ultimate decision of the termination being upheld by Dr. Woodward. Earl made the first termination, but Earl was not the final decision maker.

---

[17] *See* Docket No. 18 at ¶55 ("During this hearing, Dr. Earl introduced testimony and other evidence about a host of matters that had never before been identified as a basis for termination or other discipline.").

[18] *Sims v. City of Madisonville*, 894 F.3d 632, 638 (5th Cir. 2018) (citations omitted).

6

Ultimately, the Fifth Circuit clarified that the Court's standard of causation for a First Amendment retaliation case is that a plaintiff only has to show "an affirmative causal link" between a party's actions and the ultimate termination by the final decision maker.[19] The decision reveals that prior to the summer of 2018, the law surrounding final decision makers and First Amendment retaliation was unsettled.[20] That means that at the time of Earl's actions, there was no clearly established law for him to violate. It is for this reason that Earl is entitled to qualified immunity on Papin's First Amendment retaliation claim.

### B. FOURTEENTH AMENDMENT DUE PROCESS

Papin alleges a violation of his Fourteenth Amendment rights to procedural and substantive due process by Earl.[21] Papin, however, never raises the standard for substantive due process in the motion to dismiss pleadings. For that reason, the Court considers Papin's substantive due process claim abandoned and dismisses it.[22]

Though not expressly articulated as such, Papin's amended complaint alleges two types of procedural due process violations: a lack of notice and a lack of adequate hearing. Papin

---

[19] *Id.* at 639, 641.

[20] *Id.* at 638–41.

[21] Papin also asserts this claim against Dr. Woodward, though she has not moved for qualified immunity.

[22] *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) ("[The] failure to pursue this claim beyond [the] complaint constitute[s] abandonment.").

7

says his due process rights were violated when, during his appeals hearing, Earl – "act[ing] in a quasi-prosecutorial fashion" – "introduced testimony and other evidence about a host of matters that had never before been identified as a basis for termination."[23] Papin alleges that, because he had no prior notice of the *true* basis for his termination, he was unable to defend himself during the hearing and prevent his subsequent termination.[24] Second, Papin alleges a lack of reasonable opportunity to respond because of the hearing procedures, including the fact that he was unable to question witnesses, call his own witnesses, have counsel assist, or present in front of an unbiased panel.[25]

"Many times over the Supreme Court has made clear that there are two basic due process requirements: (1) notice, and (2) an opportunity to be heard."[26] The extent of any process owed is determined by weighing three factors under *Mathews v. Eldridge*: (1) "the private interest"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest", including the costs of providing additional procedural safeguards.[27]

---

[23] Docket No. 18 at ¶¶52–59.

[24] *See Id*.

[25] *See Id*. at ¶¶53, 54, 60.

[26] *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 634 (6th Cir. 2005) (citations omitted).

[27] *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

There is a minimum level of due process owed that the parties seem to agree upon. As Earl concedes,[28] adequate process for Papin would include notice of the charges against him.[29] This is precisely one of the things that Papin claims Earl stripped from him.

Based on the amended complaint, Earl failed to provide Papin with notice on two different occasions: he did not provide the full extent of the reasons for Papin's termination at their January 10, 2017 meeting nor did he provide the full list of those reasons to Papin at any time ahead of appeals hearing in July 2017. It is clear from cases dealing with dismissals in similar academic programs that it is clearly established that the bare minimum requirement for due process is one of notice.[30] As such, Earl should have understood that Papin had the right to receive notice of the full set of allegations against him. For these reasons, Papin's procedural due process claim in regards to notice survives the Motion to Dismiss and Earl is not entitled to qualified immunity.[31]

---

[28] *See* Docket No. 23 at 7-8.

[29] *Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 89 (1978) (citations omitted).

[30] *Davis v. Mann*, 882 F.2d 967, 975 (5th Cir. 1989) (student dismissed from dental residency program "must be given some meaningful notice and an opportunity to respond.").

[31] The Court notes that it must take the complaint's factual allegations as true in ruling on a 12(b)(6) motion to dismiss. One could not help but read the letter attached to Earl's motion that seems to refute the assertion that Papin had no prior notice of the allegations against him at the appeals hearing. Where the issue is "plausibility rather than a lack of evidence," the Court will not weigh the competing facts. *Doe v. Univ. of Miss.*, No. 3:16-CV-63-DPJ-FKB, 2018 WL 3570229, at *11 (S.D. Miss. July 24, 2018).

The Court now turns to Papin's second due process allegation, that the hearing procedures did not provide him with a sufficient opportunity to respond to the allegations against him. Papin and Earl dispute the boundaries of the property interest created by Papin's contract with the Medical Center. Earl believes the interest is identical to that a student who, facing expulsion for academic reasons, has in continuing enrollment; Papin believes his interest is a stronger one.[32]

At a minimum, Papin had a property interest in his residency at UMMC.[33] To determine the extent of that interest, the Court looks to similar cases. Courts have evaluated dismissals in a school setting as either academic or disciplinary for purposes of evaluating the process owed.[34] In residency situations, courts have classified a wide variety of reasons for dismissal

---

Papin should take seriously the evidence presented and evaluate whether it is worth the Court's time to move forward on a due process claim alleging a lack of adequate notice.

[32] *Compare* Docket No. 23 at 7–8 *with* Docket No. 29 at 9–17.

[33] *See Davis*, 882 F.2d at 972 (holding that contract, similar to the one present in this case, between UMMC and dental resident created a property interest); *Owens v. Thomae*, 759 So. 2d 1117, 1122 (Miss. 1999) (holding that medical residents were employees of UMMC).

[34] *See Beauchene v. Miss. Coll.*, 986 F. Supp. 2d 755, 768 (S.D. Miss. 2013) ("A disciplinary dismissal requires that the student be given oral or written notice of the charges and evidence against him and the opportunity to present his side of the story. . . . In contrast, an academic dismissal calls for far less stringent procedural requirements.") (quotations and citations omitted). Papin argues that his interest in his residency should be evaluated under the standard given to terminated employees. However, he concedes that cases involving disciplinary dismissals in an academic setting apply the same standard as cases involving terminated employees. Docket No. 29 at 13 ("And student disciplinary expulsions are evaluated under the same *Mathews* due process standards which apply to employees.").

as being academic in nature.[35] However, the allegation of sexual harassment in this case moves Papin's dismissal from an academic dismissal to a disciplinary dismissal.[36]

In trying to comprehend the extent of the due process owed to Papin, this Court finds *Plummer v. University of Houston* instructive.[37] In *Plummer*, two students were faced with disciplinary action for sexual misconduct. The Fifth Circuit held the amount of due process owed is "intensely practical" and the necessary procedure will vary depending on the factual circumstances.[38] In interpreting *Mathews,* the court held that the due process owed is based on a "a sliding scale that considers three factors: (a) the student's interests that will be affected; (b) the risk of an erroneous deprivation of such interests through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and (c)

---

[35] *See Horowitz*, 435 U.S. at 85–86 (dismissal of medical student for poor performance in clinic rotations was an academic dismissal); *Shaboon v. Duncan*, 252 F.3d 722, 731 (5th Cir. 2001) (dismissal of student from medical residency for failure to comply with mental health staff for her own treatment was academic dismissal); *Mathai v. Bd. of Sup'rs of La. State Univ.*, 959 F. Supp. 2d 951, 959 (E.D. La.), *aff'd*, 551 F. App'x 101 (5th Cir. 2013) (dismissal of medical student for failure to comply with a drug testing agreement was an academic dismissal); *Shah v. Univ. of Texas Sw. Med. Sch.*, 54 F. Supp. 3d 681, 694–95 (N.D. Tex. 2014) (dismissal of medical student for lowest possible grades in "professionalism and interpersonal skills" was academic dismissal).

[36] *See generally Plummer v. Univ. of Houston*, 860 F.3d 767 (5th Cir. 2017), *as revised* (June 26, 2017); *Doe v. Miami Univ.,* 882 F.3d 579 (6th Cir. 2018); *Univ. of Miss.*, 2018 WL 3570229, at *1.

[37] 860 F.3d 767 (5th Cir. 2017), *as revised* (June 26, 2017).

[38] *Id.* at 773.

the university's interests, including the burden that additional procedures would entail."[39] The court found that the first and third factor were easily identifiable: the possibility of expulsion would have a lasting, negative impact on the students' lives while the university also had a strong interest in the safety of its students.[40] The court turned to the second factor for the determination of the case and asked if "the risk of erroneously depriving [the students'] interests through the procedures used, and the probable value, if any, of additional or substitute procedure safeguards."[41]

The *Plummer* court ultimately concluded that because the unique facts in the case so obviously supported a finding of guilt for the two students, "further procedural safeguards would not have lessened the risk of an erroneous deprivation of [the students'] interests or otherwise altered the outcome."[42]

Here, the loss of a professional training program and the allegations amongst professional colleagues of inappropriate behavior has had a great impact on Papin and his future. On the other hand, UMMC and Earl had an interest in the safety of other students, the safety of patients, and of the integrity of their program. Like *Plummer*, we find ourselves evaluating "the risk of erroneously depriving [Papin's] interests through

---

[39] *Id*.

[40] *See Id*.

[41] *Id*. at 774.

[42] *Id*. (The Court noted that there was undisputed video evidence of the sexual misconduct taking place and the two accused students playing a part in the misconduct.)

the procedures used, and the probable value, if any, of additional or substitute procedure safeguards."[43]

While the facts of each case make it difficult for courts to set any universal standard when it comes to the due process procedures owed in a student disciplinary hearing, the hearing itself "must be meaningful and must provide the accused with the opportunity to respond, explain, and defend."[44] In gathering student disciplinary cases from across the country, the Sixth Circuit listed these points as ones to keep in mind:

1. "An accused individual has the right to respond and defend, which will generally include the opportunity to make a statement and present evidence. It may also include the right to call exculpatory witnesses."

2. "Some circumstances may require the opportunity to cross-examine witnesses, though this right might exist only in the most serious of cases."

3. Counsel is typically not required, but "may be required by the Due Process Clause to ensure fundamental fairness when the school proceeds through counsel or the procedures are overly complex." [45]

Further, the Fifth Circuit in evaluating the potential bias of an administrator conducting a disciplinary hearing held that "[a] school administrator involved in the initiation and investigation of charges is not thereby disqualified from conducting a

---

[43] *Id.*

[44] *Flaim*, 418 F.3d at 635 (quotations and citations omitted).

[45] *Id.* at 635–36 (citations omitted).

hearing on the charges, although the facts of an occasional case may demonstrate that a school official's involvement in an incident created a bias such as to preclude his affording the student an impartial hearing."[46]

In a case involving a medical student, the Fifth Circuit found that procedural due process was satisfied because the student received ample notice of the reasons for dismissal and the student had two hearings.[47] At the second hearing, which was conducted by a professor from a different medical school, the student was represented by counsel, who was allowed to call witnesses, present exhibits, and cross-examine witnesses presented by the school.[48]

Now turning to the relevant facts of this case, according to the amended complaint. The allegations made against Papin during the appeals hearing were serious, particularly the one regarding the sexual harassment of a coworker. Further, the value of Papin's future career rests entirely within the residency program, to which he had a property interest. Papin

---

[46] *Brewer by Dreyfus v. Austin Indep. Sch. Dist.*, 779 F.2d 260, 264 (5th Cir. 1985) (quotations and citations omitted).

[47] *Than v. Univ. of Texas Med. Sch. at Houston*, 188 F.3d 633, 634–35 (5th Cir. 1999).

[48] *Id.; see also Plummer*, 860 F.3d at 772 (students allowed to have attorney assistance, make opening and closing arguments, testify, present witnesses, cross-examine witnesses, and raise legal and factual objections to the panel); *Willis v. Texas Tech Univ. Health Scis. Ctr.*, 394 F. App'x 86, 87 (5th Cir. 2010) ("The letter notified [student] of a hearing date and included: the factual basis for the complaint; the portions of the Student Code allegedly violated; a list of the Board members and an opportunity to challenge them for partiality; and an explanation of how to submit evidence, call witnesses in his behalf, and secure an advisor.").

did not have the opportunity for questioning or presentation of his own witnesses at his hearing.[49] He was unable to have counsel assist him,[50] and Earl's role, along with the threat of a lawsuit, biased the panel.[51] It seems highly plausible that the addition of safeguards similar to those used by other schools,[52] would have "lessened the risk of an erroneous deprivation."[53]

An adequate opportunity to be heard is a clearly established floor of procedural due process, especially in academic dismissal cases. If Earl's real reason for Papin's termination included an allegation of sexual harassment, Earl should have been even more aware that a heightened level of due process was due to Papin during his disciplinary hearing. For those reasons, Earl's motion for qualified immunity on the due process claim is denied.

"It bears repeating that sufficiently stating a claim says nothing about a plaintiff's ability to succeed at summary judgment

---

[49] Docket No. 18 at ¶¶53, 54, 60.

[50] *Id.*

[51] *Id.* at ¶ 61.

[52] *See* supra, footnote 48.

[53] *Univ. of Miss.*, 2018 WL 3570229, at *11 (student's claim against University for due process violations in sexual misconduct disciplinary action survived 12(b)(6) motion and 11th Amendment immunity defense by university Chancellor).

or at trial. That is especially true in the qualified immunity context."[54]

For those reasons, Earl's Motion to Dismiss is GRANTED as to the First Amendment Retaliation claim and is DENIED as to the Due Process claim.

Within 10 days the parties are instructed to contact the Chambers of the Magistrate Judge for the entry of a new Case Management Order.

SO ORDERED, this the 28th day of September, 2018.

s/ CARLTON W. REEVES<br>
*United States District Judge*

---

[54] *Acadia Ins. Co. v. Hinds Cty. Sch. Dist.*, No. 3:12-CV-188-CWR-LRA, 2013 WL 2182799, at *7 (S.D. Miss. May 20, 2013).