# EXHIBIT "U" - July 5, 2017 Letter



The University of Mississippi
MEDICAL CENTER
Education · Research · Healthcare

Department of Human Resources
2500 N. State Street • Jackson, MS 39216
Phone: 601.984.1946 • Fax: 601.984.1180

July 5, 2017

Joel Dillard, Esq.
775 N. Congress St.
Jackson, MS 39202

Mr. Dillard:

The University of Mississippi Medical Center is in receipt of your letter of March 3, 2017, requesting an appeal of the decision to terminate Joe Papin's House Officer Contract and to remove him from the residency program at UMMC.

Due to your written request and in accord with the Graduate Medical Education policies, Dr. Steven Bondi has been selected as chairman of the appeal committee. Dr. Bondi will constitute a hearing panel in accordance with UMMC policy and set a hearing date in approximately ten business days from the date of this letter.

Mr. Papin may have counsel present at the hearing, but counsel will not be allowed to participate and shall be there only in an advisory capacity. In addition, a record will be made of the hearing by a certified court reporter.

Sincerely,

Molly Brasfield
Director of Human Resources-Academics & Research

**The following notice is hereby provided concerning Mr. Papin's dismissal:**

**FACTS:**

Dr. Papin began his residency at UMMC as a House Officer on July 1, 2016.

The first complaint into Dr. Papin's behavior occurred on July 29, 2016, twenty-eight days into his residency. Dr. Papin was in a cardiovascular rotation in the Cardiovascular Intensive Care Unit (CVICU). Dr. Papin was not accustomed to the way nurse practitioners are

www.umc.edu

utilized at UMMC, their being able to run the day to day operations of the CVICU, and his reaction/responses to them was less than professional. When nurse practitioners would ask him to perform routine tasks, or wish to teach him something, he arrogantly responded with statements such as, "You are not my boss", or "I am a surgeon". He would not check in with them and then he would not be seen until it was time for evening rounds.

Dr. Ines Berger, Professor – Anesthesiology, discovered that Dr. Papin had not been given a CVICU policy at the beginning of the rotation and was only given one after he had carried coffee into a patient's room, which was against policy. Dr. Papin was confronted by a nurse practitioner in regards to his violation of policy, which escalated into a heated exchange. Dr. Berger met with Dr. Papin and provided feedback to him about perception, the role of nurse practitioners, and what he needed to do to be successful. She then Emailed Dr. Earl and Dr. Jay Shake, Associate Professor – Surgery and Director of the CVICU. She indicated that Dr. Papin had issues with all four of the CVICU nurse practitioners, as well as a pharmacists.

Dr. Earl responded to Dr. Berger, sharing that he, too, had been apprised of issues and would follow up with Dr. Papin. Dr. Earl met with Dr. Papin on numerous occasions and provided feedback and counseling regarding his persistent professionalism and honesty issues.

Dr. Earl met with Joe Papin again on December 20, 2016. This meeting was to address Dr. Papin's recurring issues of professionalism that have been present through much of the first six months of his residency. This meeting specifically addressed:
1. Dr. Papin's unwillingness to help with tasks
2. Dr. Papin leaving the hospital during duty hours to exercise.
3. Dr. Papin's condescending tone to nurses and fellow residents.
4. Dr. Papin's leaving clinics without telling anyone.
5. Dr. Papin's poor inter-professional communication

After this meeting, Dr. Papin's performance did not improve and patient safety issues developed concerning Dr. Papin's behavior.
Renee Greene, Senior Education Administrator, received emails concerning Dr. Papin's performance.
On January 3, 2017, Dr. Colin Muncie, Pediatric Surgery Research Fellow, sent an email to Renee Greene outlining an incident that had occurred the prior weekend that reflected Papin's inefficiency and contumacious conduct. Dr. Muncie had delegated the admittance of a trauma patient to the ICU to Dr. Papin. He was specifically instructed to enter orders and communicate to the ICU. Dr. Muncie was informed by another resident at the end of shift that the ICU was surprised and never notified that the patient was coming. When Dr. Muncie confronted Dr. Papin, he confidently told him that he had spoken with someone, although he could not remember who it was. Dr. Muncie followed up with the ICU nurse practitioner, who spoke to everyone who had been on duty. It was confirmed that Dr. Papin never spoke with anyone on the ICU team, was untruthful about contacting the ICU, and failed to perform the tasks assigned to him.

Dr. William Crews, PGY3 Surgical Resident, sent an email on January 3, 2017, to Renee Greene about issues of untruthfulness concerning patient care. Dr. Crews reported that Dr. Papin always seemed to show up just before rounds without actually having seen any of the patients and then would lie to the residents about what he had done. When caught doing something



**The University of Mississippi**
**MEDICAL CENTER**
Education • Research • Healthcare

Department of Human Resources
2500 N. State Street • Jackson, MS 39216
Phone: 601.984.1946 • Fax: 601.984.1180

wrong, he would also blame a medical student for his own errors. Dr. Crews also spoke with Dr. Meagan Mahoney, Surgery House Officer, about Dr. Papin's behavior.

On January 10, 2017, Dr. Mahoney emailed Dr. Earl and Ms. Greene with numerous specific concerns. These included:
1. Dr. Papin's inattention to detail
2. Dr. Papin not knowing basic details about his patients during rounds
3. Behavior issues that were addressed on numerous occasions.
4. Dr. Papin leaving without permission when he was on first call to go for a run.
5. Dr. Papin failed to respond to a code being called on one of his patients. Dr. Papin admitted to hearing the code called, but since it was sign out time, he left.
6. Often displayed an attitude or reluctance to help with patients. Dr. Papin would use the excuse "that isn't my patient."
7. Dr. Papin again displayed a lack of honesty concerning the logging of cases. He had informed the chief resident several times that he had been logging cases, but was later discovered to have not logged any since the beginning of the rotation.
8. Dr. Papin had complaints from most of the nurses concerning rudeness and professionalism issues.
9. It was also reported that Dr. Papin was lying to the Chief resident about seeing patients before rounds.
10. Dr. Papin was dishonest about examining a patient that developed a sacral decubitous wound that required surgery. In addition to the concern of dishonesty, the other concern had to do with a detrimental action to patient care. Dr. Papin having told Dr. Mahoney that, upon his observation, a patient did not have any skin changes. When the patient was seen by Wound Care, they reported a severe ulcer that was so significant, surgery was required. This could not have happened over the course of a few days and the resulting action could have been lessened had Dr. Papin examined the patient and reported it.

Ashley Griffin, RN, also sent emails on January 9 and 10, 2017, citing seven incidents of inappropriate behavior by Dr. Papin. These included:
1. Leaving the hospital during a code
2. Did not show up on time to pre round or to get sign out
3. Dr. Papin did not go to traumas during the holidays
4. Dr. Papin tried to send a patient home that was not competent despite being warned
5. Dr. Papin made the female trauma student incredibly uncomfortable, tried to be alone with her, and preferentially chose her over the males.
6. Dr. Papin tried to round with staff without having seen the patients.
7. Dr. Papin was told to washout a massive wound on a trauma patient in the ICU.

www.umc.edu

...
...
...
...

He did not do it and left.

Dr. Earl has continuously met with Dr. Papin on numerous occasions and provided feedback and counseling, including his mid-year evaluation, their meeting on December 20, 2016, and numerous other meetings. Dr. Earl has repeatedly discussed the concerns that had been raised regarding his lying or being untruthful about patient care, leaving the hospital in the middle of his shift to exercise, unwillingness to help with tasks, condescending tone to nurses and fellow residents, and poor communication. Dr. Earl has seen no improvement in Dr. Papin's conduct.

On January 27, 2017, Dr. Papin was interviewed by Pat Whitlock with the Department of Human Resources. The issues cited above were discussed with him and he provided a response for each. He did not accept any accountability for his actions and indicated that it was either someone else's fault or no one had given him clear feedback. He did not think he was being rude or condescending and once it was pointed out to him that this was how he was perceived, he was putting forth effort to change. He further maintained that neither Dr. Earl, nor anyone else, had ever given him feedback that there were any concerns.

Dr. Papin's statements to human resources that no one has ever discussed these issues with him or provided feedback, are disingenuous and are contradicted by the facts of this case. UMMC no longer has faith in Dr. Papin's honesty and there is great concern regarding patient safety in allowing him to continue at UMMC. Therefore, he is recommended for termination.

## Potential Witnesses:

Dr. T. Mark Earl
Dr. Rick Barr
Dr. Inez Burger
Dr. Jay Shake
Dr. Colin Muncie
Dr. Meghan Mahoney
Ashley Griffin
Dr. William Crews
Renee Greene

## Exhibits:

See Documents produced bates labeled 1 to 48